UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CAROLINA VILLAGRAN, ET AL | CIVIL ACTION NO.: 2:22-CV-170 |
| VS. | JUDGE: JAMES D. CAIN, JR. |
| LA HERRADURA, LLC AND RIGOBERTO MELENDEZ | MAGISTRATE JUDGE: KATHLEEN KAY |

**FIRST SUPERSEDING AND AMENDING COMPLAINT FOR DAMAGES**

NOW INTO COURT, through undersigned counsel, come the plaintiffs, who pursuant to Fed. R. Civ. P. 15(a)(1) file this First Superseding and Amending Complaint for Damages, which replaces and supersedes the plaintiffs' original Complaint for Damages, as follows:

**PARTIES**

1.

The following individuals join as plaintiffs in this suit:

a) Carolina Villagran, a major, who is a lawful U.S. resident domiciled in Texas;

b) Patricia Villagran, a major, who is a Mexican citizen;

c) Guadalupe Yesenia Villagran, a major, who is a lawful U.S. resident domiciled in Texas;

d) Joel Isai Rosas, a major, who is a U.S. citizen domiciled in Texas;

e) Francisco Javier Angel Perez, a major, who is a lawful U.S. resident domiciled in Texas;

f) Jorge Alejandro Aranda, a major, who is a Mexican citizen.

2.

Made defendants herein are the following parties who are liable individually, jointly, and solidarily unto the plaintiffs for all causes of action and damages as set forth in this Complaint:

a) **LA HERRADURA, LLC**, a Louisiana limited liability company registered to do business in the State of Louisiana, which may be served through its agent for service of process, Raul Mendez, 2624 Highway 14, Lake Charles, Louisiana 70601; and

b) **RIGOBERTO MELENDEZ,** a U.S. citizen domiciled in the State of Louisiana, who may be personally served at his residence located at 550 McArthur Drive, Alexandria, Louisiana 71301.

**JURISDICTION**

3.

The plaintiff brings this action against the defendants for unpaid wages, unpaid overtime compensation, declaratory relief, and other relief under the Fair Labor Standards Act, as amended, 29 U.S.C. § 216(b) (the "FLSA"), as well as other related claims arising from the wrongful acts committed by the defendants during the plaintiffs' employment with the defendants. This Court has jurisdiction over these claims pursuant to 28 U.S.C. § 1331 and the FLSA. This Court also has supplemental jurisdiction over the plaintiffs' state law claims under 28 U.S.C. § 1367, as those state law claims arise from the same facts and circumstances and are so related to the federal FLSA claims over which the Court has original jurisdiction under 28 U.S.C. § 1331 that they form part of the same case or controversy.

4.

This Court also has jurisdiction over the claims asserted in this suit under 28 U.S.C. § 1332, as there is complete diversity of citizenship between all plaintiffs and all defendants, and the plaintiffs each seek recovery in excess of $75,000.00. To the extent any individual plaintiff's claim may be found not to be in excess of the jurisdictional amount, the Court nevertheless has

supplemental jurisdiction over such claims under 28 U.S.C. § 1367, as those claims arise from the same facts and circumstances and are so related to the claims over which the Court has original jurisdiction under 28 U.S.C. § 1332 that they form part of the same case or controversy.

## VENUE

5.

Pursuant to 28 U.S.C. § 1392, venue is proper in this Court as to the defendants, because a substantial part of the events or omissions giving rise to the plaintiffs' claims occurred in this judicial district, and further because both defendants reside in this judicial district.

## FACTS REGARDING THE DEFENDANTS' FLSA WAGE VIOLATIONS AND OTHER WRONGFUL ACTS

6.

At all material times pertinent to the allegations of this Complaint, defendant Rigoberto Melendez was the owner of La Herradura, LLC. Under the La Herradura name, Melendez owned El Patron, a restaurant which was operated by the plaintiffs and located at 2624 Gerstner Memorial Drive (also known as Highway 14) in Lake Charles, Louisiana 7060. Melendez personally made the decisions on behalf of La Herradura that resulted in the wrongful conduct that gave rise to the plaintiffs' damages.

7.

At all material times pertinent to the allegations of this Complaint, Raul Mendez was the registered agent, member, and manager of La Herradura, LLC.

8.

Upon information and belief, prior to Hurricanes Laura and Delta, the defendants operated a restaurant by the name of El Tapatio at 2624 Gerstner Memorial Drive in Lake

Charles. Upon information and belief, the defendants used a Capital One bank account in the name of El Tapatio for the finances associated with the operation of that restaurant.

9.

Following Hurricanes Laura and Delta in the fall of 2020, defendant Melendez approached plaintiff Guadalupe Villagran and the other plaintiffs, who at that time were all residing in Texas, with a proposal to open and operate a Mexican restaurant in the building located at 2624 Gerstner Memorial Drive in Lake Charles, which had been damaged by the recent storms.

10.

The defendants agreed that the plaintiffs would each be paid a specified amount on a biweekly basis, both for the work the plaintiffs performed during renovation of the building as well as for the work the plaintiffs performed in operating the restaurant. The amounts that the defendants promised to pay each of the plaintiffs were as follows (the "proposed wages"):

    a)    Carolina Villagran: $400.00 biweekly, plus tips;

    b)    Patricia Villagran: $1,200.00 biweekly;

    c)    Guadalupe Villagran: $1,500.00 biweekly;

    d)    Joel Rosas: $1,300.00 biweekly;

    e)    Francisco Perez: $1,500.00 biweekly; and

    f)    Jorge Aranda: $1,600.00 biweekly.

11.

With regards to plaintiff Guadalupe Villagran's compensation, in addition to her proposed wages of $1,500.00 every two weeks, Melendez promised her that he would also pay

her a 50% commission based on the take of El Patron Restaurant as additional compensation for her efforts in operating and managing the restaurant.

12.

In addition to their proposed wages, Melendez also promised the plaintiffs that he would cover their travel costs and, when they moved to Lake Charles, to pay their down payments on the purchase of homes in Louisiana so they could move from their residences in Texas to operate the restaurant.

13.

Based on the representations and promises made by Melendez, the plaintiffs accepted the offer of employment by the defendants to first restore and renovate the damaged building and prepare it for opening and operation as the El Patron restaurant, and then to operate El Patron once they had completed the renovations.

14.

On or about February 23, 2021, the plaintiffs began the process of completely renovating the damaged building, which involved significant time and effort to perform comprehensive demolition and construction work, deep cleaning, painting, replacing and installing kitchen appliances, and other interior and exterior cleaning, installation, and repair work necessary to get the building into working order to operate as a functioning restaurant following the destruction caused by Hurricanes Laura and Delta.

15.

During the time the plaintiffs performed these renovations, the plaintiffs had not moved to Louisiana, and instead they traveled back and forth each week from Austin, Texas, to Lake Charles, Louisiana. Upon their arrival to Lake Charles at the beginning of the week, they would

check into a hotel or other accommodations, work approximately 13 hours a day for three to four days, and then return to their homes in Texas at the end of the week. Thus, excluding their travel time of approximately 10 hours per week, the plaintiffs worked between approximately 39 hours per week to approximately 52 hours per week while renovating the building.

16.

During the time the plaintiffs were performing renovations on the building, the defendants gave the plaintiffs two checks totaling approximately $14,000.00, which were for the purpose of paying for the materials necessary to renovate the building. However, the defendants did not pay the plaintiffs the proposed wages, hotel or travel expenses, food costs, or any other amounts for any of the time that they spent renovating the building. Instead, Guadalupe Villagran voluntarily paid each of the plaintiffs out of her own personal funds in an effort to advance them the funds necessary to compensate them for the work they had performed since the defendants failed to do so, and with the understanding and belief that the defendants would pay them the agreed upon proposed wages in the future.

17.

The plaintiffs completed the renovations and repairs to the building on June 13, 2021. On the next day, June 14, 2021, they opened El Patron for business. Although the restaurant operated under the name El Patron, the defendants continued to use the El Tapatio Capital One bank account for the restaurant's finances.

18.

During the course of their employment with the defendants in operating El Patron from June 14, 2021, until they were fired by the defendants on September 8, 2021, the plaintiffs worked seven days a week with extremely few exceptions. In fact, the only days they did not

work operating the restaurant during that period of their employment with the defendants was the Fourth of July holiday on July 4, 2021, and then two days of closure for Hurricane Ida on August 29 and 30, 2021.

19.

Throughout the time that the plaintiffs operated El Patron during their employment with the defendants, Carolina Villagran worked as a waitress; Patricia Villagran worked as a hostess; Guadalupe Villagran worked as a manager and cashier; Joel Rosas worked as a dishwasher and chef; Francisco Perez worked as a chef and griller; and Jorge Aranda worked as a chef.

20.

The plaintiffs who worked in the front of the house—Carolina Villagran, Patricia Villagran, and Guadalupe Villagran—worked from 10:30 am to 10:30 pm each day, for a total of 12 hours a day, or a total of 84 hours per week.

21.

The plaintiffs who worked in the back of the house—Joel Rosas, Francisco Perez, and Jorge Aranda—worked from 9:00 am to 11:30 pm each day, for a total of 14.5 hours a day, or a total of 101.5 hours per week.

22.

The defendants did not provide the plaintiffs with the opportunity or ability to track the time they worked during the course of their employment, nor did the defendants pay the plaintiffs based on the amount of time they worked.

23.

The defendants never paid Guadalupe Villagran her proposed wages, commissions, or any other amounts for the work that she performed from February 23, 2021, to September 8,

2021. The only funds the defendants provided to Guadalupe Villagran were the checks totaling approximately $14,000.00 for materials associated with repair of the building.

24.

The defendants also did not pay any of the proposed wages to any of the other plaintiffs for the work associated with renovating the building which they performed during their employment with the defendants from February 23, 2021 to June 13, 2021.

25.

The plaintiffs other than Guadalupe Villagran were paid the proposed wages by the defendants for approximately the first four weeks that El Patron was open, beginning on June 14, 2021. However, after approximately the first four weeks of operating El Patron, the plaintiffs were paid infrequently, and in some cases they were not paid at all. For the times that the defendants did actually pay the plaintiffs after the first four weeks, the amounts paid by the defendants were less than the agreed upon proposed wages, and in some cases the plaintiffs were even unable to cash the checks that were paid to them because of insufficient funds in the defendants' account.

26.

During their employment with the defendants, the plaintiffs also used their own funds to purchase food, drinks, and other goods to be used in the operation of the restaurant. The amounts paid by the plaintiffs to purchase such goods were never reimbursed by the defendants.

27.

Toward the end of their employment, Melendez told the plaintiffs that the restaurant was doing poorly, that he was behind on paying rent on the building, and that therefore El Patron would have to be closed down.

28.

Contrary to what Melendez told them, the plaintiffs understood that El Patron was not doing poorly, and in fact based on their own experiences operating the restaurant, business was actually going well.

29.

In an effort to find a solution by making arrangements for an extension or reduction in the rent so they could continue operating, the plaintiffs approached the landlord about Melendez's statements that the defendants were behind on rent. However, the landlord informed them that, contrary to what Melendez told them, the rent was actually fully and timely paid, and there were no issues with the defendants' rent payments.

30.

The defendants fired the plaintiffs on September 8, 2021, and El Patron ceased operations.

31.

Shortly after the defendants fired the plaintiffs and allegedly closed El Patron, and despite the defendants' representations that business was going poorly at that location, the defendants opened the restaurant back up in the exact same location under the same name. The defendants continued to use the El Tapatio bank account with Capital One for El Patron's business and, upon information and belief, have continued to do so.

**DEFENDANT RIGOBERTO MELENDEZ'S LIABILITY
FOR ACTS OF LA HERRADURA, LLC UNDER THE ALTER EGO DOCTRINE**

32.

The plaintiffs repeat and reiterate all of the foregoing allegations as if herein set forth, and in addition, allege:

33.

Although Melendez purported to operate El Patron as a separate and distinct business entity through the limited liability company La Herradura, LLC, the defendants should be afforded no protections under business entities laws and their separate personhoods should be disregarded based on the operation of the business as a sham entity and as an alter ego of Melendez.

34.

Upon information and belief, Melendez commingled personal funds with business funds, used the funds of La Herradura, LLC as his own, and treated La Herradura, LLC as his alter ego.

35.

Before the defendants fired the plaintiffs, the plaintiffs learned that funds were being withdrawn by the defendants from the El Tapatio Capital One account and disbursed directly to Melendez and to Raul Mendez, a member and manager of La Herradura, LLC.

36.

Specifically, on July 19, 2021, Melendez withdrew $14,810.00 from the El Tapatio Capital One account, which upon information and belief was taken for his personal use. On July 26, 2021, Mendez withdrew $9,000.00 from the El Tapatio Capital One account, which upon information and belief was taken for his personal use.

37.

The defendants accused the plaintiffs of stealing those funds from the El Tapatio Capital One bank account. However, the defendants did not realize that the plaintiffs had access to and had already seen the El Tapatio Capital One bank statements for that month, and therefore the plaintiffs knew that Melendez and Mendez had in fact withdrawn those funds.

38.

Additionally, on July 6, 2021, Melendez wrote a check in the amount of $6,500.00 from the El Tapatio Capital One account, made payable to an entity by the name of "Valentinos," which upon information and belief is another entity owned and/or operated by Melendez.

39.

These personal withdrawals by Melendez and others acting on his behalf from the business account of La Herradura, LLC, resulted in undercapitalization of the business and ultimately the failure to pay the plaintiffs, including a lack of sufficient funds to honor the few checks that the defendants had written to the plaintiffs.

40.

The Court should pierce La Herradura, LLC's corporate veil and apply the "alter ego" doctrine to find that La Herradura, LLC existed to serve as an alter ego of Melendez, and therefore individual, joint, and solidary liability should be imposed upon the defendants for all of the wrongful acts alleged in the Complaint, such that the assets of La Herradura, LLC, the personal assets of Melendez, and the assets of any other business owned and/or operated by Melendez be made available to satisfy any judgment entered in favor of the plaintiffs.

**CAUSES OF ACTION AND BASIS OF CLAIMS**

**First Cause of Action: Violation of Minimum Wage and Overtime Wage Requirements Under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.***

41.

The plaintiffs repeat and reiterate all of the foregoing allegations as if herein set forth, and in addition, allege:

42.

Defendants La Herradura, LLC and Rigoberto Melendez are each individually and both collectively an "employer" and an "enterprise" as defined by the FLSA, 29 U.S.C. § 203, and are engaged in commerce within the meaning of the FLSA, § 203(b), (s)(1).

43.

The FLSA requires covered employers like the defendants to pay non-exempt employees like the plaintiffs no less than $7.25 per hour for all hours worked by the plaintiffs, as well as to pay the plaintiffs one and one-half (1.5) times their regular rate of pay for all hours worked in excess of forty (40) in a workweek. 29 U.S.C. § 206 and 207.

44.

The plaintiffs regularly worked more than forty (40) hours per week for the defendants, but the defendants did not properly compensate the plaintiffs the statutory minimum wage owed to them for their hours worked, nor the statutory amounts due for all of their overtime hours as required by the FLSA.

45.

The defendants did not and have not made a good faith effort to comply with the FLSA as it relates to the compensation of the plaintiffs.

46.

The defendants knew that the plaintiffs worked regular and overtime hours during their employment without proper compensation, and the defendants willfully failed and refused to pay the plaintiffs their statutory wages at the minimum wage rates and overtime rates. *See* 29 U.S.C. § 255.

47.

The defendants' willful failure and refusal to pay the plaintiffs the minimum wages and overtime wages for time worked violates the FLSA. 29 U.S.C. § 206 and 207.

48.

As a direct and proximate result of these unlawful practices, the plaintiffs suffered and continue to suffer wage loss and therefore under the FLSA are entitled to recover from the defendants unpaid minimum wages and unpaid overtime wages for up to three years prior to the filing of their claims, liquidated damages or prejudgment interest, attorney fees and costs, and such other legal and equitable relief as the Court deems just and proper.

**Second Cause of Action: Violation of Louisiana Law on Payment of Employees Under La. R.S.  23:631 *et seq.***

49.

The plaintiffs repeat and reiterate all of the foregoing allegations as if herein set forth, and in addition, allege:

50.

La. R.S. 23:631 requires an employer such as the defendants to pay all amounts due to its employees within 15 days of discharge. When an employer fails to timely pay those amounts owed to its employees, the employer shall be liable for penalties in the amount of 90 days wages, as well as attorney fees. La. R.S. 23:632.

51.

The plaintiffs have made multiple demands upon the defendants to pay the unpaid amounts which are still due to them for past wages, and despite those demands, the defendants have refused to pay any amounts to the plaintiffs.

52.

As a direct and proximate result of the defendants' unlawful practices, the plaintiffs suffered and continue to suffer wage loss and therefore under La. R.S. 23:631 *et seq.* are entitled to recover from the defendants all unpaid wages owed to them, penalties of 90 days wages, attorney fees, and such other legal and equitable relief as the Court deems just and proper.

**Third Cause of Action: Bad Faith Breach of Contract**

53.

The plaintiffs repeat and reiterate all of the foregoing allegations as if herein set forth, and in addition, allege:

54.

The defendants promised to pay each of the plaintiffs the agreed upon proposed wages and a down payment on the plaintiffs' homes in Louisiana in exchange for the plaintiffs performing work to renovate the building and to operate El Patron as a restaurant. The defendants' agreement to pay the plaintiffs these amounts in exchange for the plaintiffs' performance of work was a bilateral, onerous contract, which was binding on the parties.

55.

The defendants' failure to pay each of the plaintiffs the agreed upon proposed wages was a breach of that contract.

56.

The defendants' breach of the contract with the plaintiffs was a breach in bad faith, and therefore the defendants are liable for all damages sustained by the plaintiffs, foreseeable or not, that are a direct consequence of the defendants' failure to perform. La. Civ. Code art. 1997.

57.

As a direct and proximate result of the defendants' bad faith breach of contract with each of the plaintiffs, the defendants are liable to the plaintiffs for all damages they sustained, including the amounts owed to the plaintiffs under the employment contract which have not been paid, the agreed upon proposed wages, unpaid commissions owed to plaintiff Guadalupe Villagran, down payments on homes purchased by the plaintiffs, and any and all other damages, foreseeable or not, resulting from the defendants' bad faith and intentional breach of contract.

**Fifth Cause of Action: Unjust Enrichment**

58.

The plaintiffs repeat and reiterate all of the foregoing allegations as if herein set forth, and in addition, allege:

59.

The defendants have saved money by failing to pay all amounts rightfully promised by the defendants and which are owed under the law to the plaintiffs as wages in exchange for the work performed by the plaintiffs.

60.

By failing to pay the amounts they owed to the plaintiffs, the defendants received benefits, including repair of the building, free labor in operating El Patron, amounts paid by the plaintiffs for the purchase of goods and equipment associated with the repair and operation of the restaurant and for the benefit of the defendants, and profits earned from the operation of the restaurant, all of which were obtained through the detriment of the plaintiffs.

61.

The defendants are under an obligation to follow rules and laws which required the defendants to pay all amounts due to the plaintiffs. Rather than comply with these requirements, the defendants breached their duties to the plaintiffs and have been unjustly enriched by the amount that the plaintiffs were rightfully owed and which the defendants were required to pay during the time that the plaintiffs performed work for the defendants and the amount of profits earned on the operation of the restaurant during the plaintiffs' employment.

62.

Defendants are liable to the plaintiffs for the amounts by which the defendants have been unjustly enriched, including the amount of their unpaid wages, unreimbursed amounts paid out of pocket by the plaintiffs for the benefit of the defendants, and the profits unjustly received by the defendants from the operation of El Patron during the plaintiffs' employment with the defendants.

**Sixth Cause of Action: Detrimental Reliance and/or Promissory Estoppel**

63.

The plaintiffs repeat and reiterate all of the foregoing allegations as if herein set forth, and in addition, allege:

64.

By representing to the plaintiffs that the defendants would pay the plaintiffs the agreed upon proposed wages and the down payments on the plaintiffs' purchases of homes in Louisiana, the defendants should reasonably have expected to induce action of a substantial character on the part of the plaintiffs. Specifically, the defendants should reasonably have expected that the

plaintiffs would rely upon the defendants' representations and agree to move their families from their domiciles in Texas to Louisiana.

65.

If not for the defendants' promises, misrepresentations, and/or inducements regarding payment of wages and down payments on housing, the plaintiffs would not have agreed to uproot their families from their residences in Texas to move to Louisiana to work for the defendants.

66.

However, in reliance on the defendants' representations, the plaintiffs agreed to move from Texas to Louisiana, at significant cost and detriment to the plaintiffs

67.

As a result of their reliance on the defendants' representations, the plaintiffs suffered damages in the amount of their unpaid wages and payments owed on homes purchased by them in Louisiana, which they would not have purchased but for the promises made by the defendants to pay the down payments on those homes.

68.

Under the theories of detrimental reliance and/or promissory estoppel, the defendants are liable to the plaintiffs for all damages suffered by the plaintiffs as a result of their reliance upon the defendants' promises, representations, and/or inducements.

**DAMAGES**

69.

As a direct and proximate result of the defendants' wrongful acts, fault, and breach of duties owed, the plaintiffs have suffered damages in the following non-exclusive particulars:

    a)    Past unpaid wages at their regular and overtime hourly rates;

 b) Unpaid commissions owed to Guadalupe Villagran;

 c) Out of pocket costs and expenses (including gas and travel costs, hotel accommodations, food, and other expenses) associated with traveling between their homes in Austin, Texas, and Lake Charles, Louisiana, to make repairs to the damaged building in Lake Charles, Louisiana;

 d) All unreimbursed costs and expenses incurred by the plaintiffs to purchase materials, equipment, goods, and products for the benefit of the defendants and the operation of the restaurant during their employment with the defendants;

 e) All profits unjustly received by the defendants from the operation of El Patron during the plaintiffs' employment with the defendants;

 f) The costs the plaintiffs' incurred in purchasing their homes in Louisiana, including but not limited to the amounts of the down payments on those homes which the defendants agreed to pay;

 g) General damages for mental pain and suffering, emotional anguish, stress, inconvenience, and annoyance;

 h) All other damages, foreseeable or not, caused by the defendants' acts to be proven at a trial of this matter.

**WHEREFORE**, the plaintiffs pray that their First Superseding and Amending Complaint for Damages be filed as prayed for according to law, including Fed. R. Civ. P. 15(a)(1), and that after the expiration of all legal delays and due proceedings are had, there be a judgment rendered herein in favor of the plaintiffs and against defendants La Herradura, LLC and Rigoberto Melendez, jointly, severally, and solidarily, and that the Court grant relief as follows:

a) Finding that defendant Rigoberto Melendez treated defendant La Herradura, LLC as his alter ego, such that the corporate formalities be disregarded and the assets of both defendants be made available to satisfy any judgment entered in favor of the plaintiffs;

b) Finding that the defendants' violations of the FLSA are willful;

c) Judgment against defendants for an amount equal to each of the plaintiffs' unpaid back wages at the applicable regular and overtime rates;

d) Judgment against the defendants for liquidated damages under the FLSA in an amount equal to each of the plaintiffs' unpaid wages;

e) Judgment against the defendants for penalties under La. R.S. 23:631 *et seq.* in the amount of 90 days wages for each plaintiff;

f) Judgment against the defendants for all damages, foreseeable or not, resulting from the defendants' wrongful acts and breach of duties owed to the plaintiffs;

g) All costs and attorney fees incurred in prosecuting this claim;

h) An award of any pre- and post-judgment interest; and

i) Any and all further relief as the Court deems just and equitable.

Respectfully submitted:

Simien & Simien, L.L.C.
Attorneys And Counselors At Law
7908 Wrenwood Boulevard
Baton Rouge, Louisiana 70809
(225) 932-9221; (225) 932-9286 (fax)

*s/Roy L. Bergeron, Jr.*
By: Eulis Simien, Jr., Bar # 12077
eulissimien@simien.com
Jimmy Simien, Bar # 1598
jimmysimien@simien.com
Roy L. Bergeron, Jr., Bar # 33726
roybergeron@simien.com