UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CAROLINA VILLAGRAN, ET AL** | **CIVIL ACTION NO.: 2:22-CV-170** |
| **VS.** | **JUDGE: JAMES D. CAIN, JR.** |
| **LA HERRADURA, LLC AND RIGOBERTO MELENDEZ** | **MAGISTRATE JUDGE: KATHLEEN KAY** |

**REPLY MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiffs respectfully submit this reply memorandum in support of their motion for partial summary judgment. For the reasons below and in the original memorandum in support of this motion, the plaintiffs request that the motion be granted as prayed for, finding that La Herradura, LLC is liable to the plaintiffs for unpaid wages, liquidated damages, attorney fees, and costs for violating the FLSA, with the determination of the amounts of such awards to be reserved for trial.[1]

**I.     La Herradura Was Subject to the FLSA Based on Enterprise Coverage**

The defendants argue that the plaintiffs' motion should be denied because they have not established coverage under the FLSA based on either individual coverage or enterprise coverage. The plaintiffs concede that, for purposes of this motion only, there is not sufficient evidence before the Court to determine whether any one or more of the plaintiffs have established individual coverage under the FLSA. If necessary, the determination of that potential basis for coverage should instead be reserved for trial following presentation of all of the evidence.

However, there is evidence to establish that La Herradura was subject to the FLSA based on enterprise coverage. First, the evidence before the Court shows that annual receipts would have exceeded $500,000.00 in gross receipts if the defendants had not prematurely shut down the

---

[1] Since the majority of the defendants' extended factual narrative has nothing to do with the pending motion, it does not warrant a point-by-point response. Instead, the plaintiff submits a reply to the statement of material facts to respond directly only to those purported material disputes identified by the defendants.

restaurant. As the defendants point out in their opposition, based on Guadaluple Villagran's testimony, the restaurant would have generated approximately $174,000 in gross revenue during the less than three months of its operation.[2] On an annualized basis, multiplying that one quarter of operations by four as provided by 29 C.F.R. § 779.269 for a new business, the total receipts of the restaurant would have been approximately $696,000.00, well in excess of the $500,000.00 threshold to trigger enterprise coverage.[3]

In *Landeros*, which applied 29 C.F.R. § 779.269 to find that a single quarter of receipts could be annualized as the plaintiffs propose here, the court cited the regulatory language to conclude that the quarterly receipts of $125,000.00 alleged in the complaint required the employer to comply with the FLSA "in workweeks falling in the following quarter year period."[4] However, *Landeros* dealt with a motion to dismiss on the pleadings, not summary judgment. Since the question was only whether the plaintiff had stated a cause of action, the court's statement about *when* FLSA coverage would begin to apply was dicta. Although the regulatory language refers to coverage for "workweeks falling in the following quarter year period," the plaintiffs have not identified any cases that have interpreted whether the regulation imposes FLSA coverage only for subsequent quarters, or also for the initial quarter upon which the calculations are based. However, as this Court has recognized, the Supreme Court has instructed courts to liberally construe the FLSA to provide coverage broadly.[5] A strict interpretation of the regulation to preclude coverage for the first quarter of the defendants' operations would limit the scope of the FLSA, contrary to

---

[2] Doc. 43 at 16.
[3] *See Landeros v. Fu King, Inc.*, 12 F. Supp. 3d 1020, 1026 (S.D. Tex. 2014) (finding that, under 29 C.F.R. § 779.269, "representative figure" of $125,000.00 from new business's first quarter of operations could be used to determine whether annual threshold of $500,000.00 was met for purposes of FLSA coverage).
[4] *Landeros*, 12 F. Supp. 3d at 1026 (quoting 29 C.F.R. § 779.269).
[5] *Sandoz v. Cingular Wireless, LLC*, 2013 WL 1290204, at *4 (W.D. La. Mar. 27, 2013) (quoting *Mitchell v. Lublin, McGaughy & Assoc.*, 358 U.S. 207, 211 (1959)) ("Courts must be mindful of the directive that the FLSA is to be 'construed liberally to apply to the furthest reaches consistent with congressional direction.'").

congressional intent and the Supreme Court's instructions. Therefore, the Court should broadly interpret the regulation to find that as long as the first quarter calculations show that annualized receipts would exceed $500,000.00, as they do here, the employer must comply with the FLSA for all periods, including the first quarter. In this case, the defendants should not be allowed to benefit from shutting down the restaurant to avoid liability for minimum wages and overtime owed to the plaintiffs when the evidence shows that the annual receipts would have exceeded the threshold for coverage had operations continued.[6]

The other element of enterprise coverage is also met because in the course of purchasing, cooking, and serving food and beverages at La Herradura, the plaintiffs were clearly engaged in commerce and handling, selling, or otherwise working with goods or materials that had been moved in or produced for commerce, pursuant to 29 U.S.C. 203(s). As the Fifth Circuit has recognized, "an employer can trigger enterprise coverage if its employees handle items that had travelled in interstate commerce at some point in the past, even if the act of handling those items does not amount to engaging in commerce in the present."[7] The fact that goods and materials used in the business might have been obtained from a local source also does not preclude coverage under the FLSA if those goods and materials first moved in interstate commerce.[8] Thus, the bar is low, and as long as some of the goods and materials that were used by La Herradura in its business

---

[6] The defendants argue that the restaurant was not doing well, based on the fact that the account was depleted during the last month. Doc. 43 at 17. However, what actually happened is that Mr. Melendez and others improperly withdrew business funds from the restaurant's bank account and deposited those funds into their personal accounts, depleting the restaurant's reserves. Deposition of Rigoberto Melendez at 84-86 (Doc. 43-2) (acknowledging withdrawal of $14,810 from restaurant account to deposit into personal account). *See also* **Exhibit C** at PLAINTIFFS000116 (showing withdrawals of $14,810.00 to Rigoberto Melendez and $9,000.00 to Raul Mendez).
[7] *Molina-Aranda v. Black Magic Enterprises, L.L.C.*, 983 F.3d 779, 786–87 (5th Cir. 2020).
[8] *Donovan v. Pointon*, 717 F.2d 1320, 1322 (10th Cir. 1983).

had travelled in interstate commerce, this element of enterprise coverage is met.[9]

A significant number of products which were handled by the plaintiffs during their employment with La Herradura traveled in interstate commerce, but the Court need only find an interstate commerce nexus with one item to conclude that FLSA coverage applies.[10] During the plaintiffs' employment with La Herradura, they prepared and served food which was purchased from the global wholesaler, Sysco,[11] as well as La Banderita tortillas produced by the company Ole Mexican Foods, which is headquartered in Georgia;[12] they purchased and sold beverages from Coca-Cola, which operates internationally;[13] and they purchased and used Genesis knives, which are manufactured by Mercer Culinary, headquartered in New York.[14] Although the defendants attached some of the restaurants' bank statements from the plaintiffs' document production as Exhibit J to their opposition, for some reason they selectively omitted certain pages of the production that include checks written from the restaurant's account to Sysco and Coca-Cola, among other businesses. The entirety of that production, which the defendants likely recognized

---

[9] *See, e.g.*, *Martinez v. Cancun Grill, Inc.*, 082009 WL 10667190, at *3 (S.D. Fla. Sept. 3, 2009) (recognizing that "the 'goods or materials' provision of Section 203(s) is intended to apply to business establishments like the restaurant in the instant case," which was a locally owned, single-location unit); *Galdames v. N & D Inv. Corp.*, 2008 WL 4372889, at *5 (S.D. Fla. Sept. 24, 2008), *aff'd*, 432 Fed. Appx. 801 (11th Cir. 2011) ("It is notable how many courts in the past three-and-a-half decades have concluded that virtually any enterprise that meets the statutory annual gross sales requirement is subject to the FLSA."); *Diaz v. Jaguar Rest. Grp., LLC*, 649 F. Supp. 2d 1343, 1347 (S.D. Fla. 2009) ("The most essential 'materials' required to operate a typical restaurant like this one have undoubtedly traveled in interstate or foreign commerce.").
[10] *Mateo v. TA HSIN, INC.*, 2021 WL 3931915, at *10 (S.D. Tex. Feb. 10, 2021) (citing *Marshall v. Victoria Transp. Co.*, 603 F.2d 1122, 1124 (5th Cir. 1979) ("Because there is no *de minimis* rule and any regular contact with commerce—no matter how small—will result in coverage, the Court only has to take judicial notice of one item's interstate commerce nexus.")
[11] *See* checks to Sysco, attached as **Exhibit C** at PLAINTIFFS000107, 108, and 115. *Rodriguez-Flores v. Lama Mediterranean Cafe, Inc.*, 2018 WL 4103020, at *1 (S.D. Tex. June 27, 2018) ("The restaurant workers cook with ingredients and tools from Sysco International Foods and Ingredients . . . . Although this would not cover the workers themselves, it does cover the restaurant."); *Charris v. Tres Ceros Corp.*, 2013 WL 12065880, at *2 (S.D. Fla. Jan. 7, 2013) (denying defendant's motion to dismiss plaintiffs' FLSA claims where there was evidence that employer restaurant used products from Sysco, which would support finding of enterprise coverage).
[12] **Exhibit D** at PLAINTIFFS000128. *See* https://olemex.com/our-company/ (identifying headquarters in Georgia).
[13] *See* checks to Coca-Cola, attached as **Exhibit C** at PLAINTIFFS000107, 108, and 115.
[14] **Exhibit D** at PLAINTIFFS000130. *See* https://www.mercerculinary.com/product/genesis-chefs-knife-10-25-4-cm/ (identifying headquarters in Ronkonkoma, New York).

would have shown the restaurant's connection to interstate commerce, is attached for completeness as **Exhibit C**. Based on these facts, the plaintiffs clearly handled food, beverages, and other materials that traveled in interstate commerce on a regular basis. Thus, that element of enterprise liability is satisfied.

For these reasons, the plaintiffs are covered under the FLSA through enterprise liability, and the defendants must pay the overtime and minimum wages to which they are entitled under the law. For purposes of this motion, the plaintiffs simply ask the Court to find that La Herradura is liable under the FLSA for those unpaid amounts, liquidated damages, and attorney fees, with the exact amounts to be determined at trial.

## II. The Defendants' Restaurant Was Not a "Mom and Pop" Business

The defendants contend that, although they dispute that Guadalupe Villagran was an owner, if she was, the defendants would not be liable for violations of the FLSA under the "Mom and Pop" Exception. That exception clearly does not apply here. First, although Jorge Aranda, one of the plaintiffs in this case, is a romantic partner of one of Guadalupe's sisters, they are not married.[15] Since Mr. Aranda is not a family member of Guadalupe as defined under the statute or regulations, the "regular employees" of the restaurant included at least one individual who was not a family member.[16] Thus, regardless of who owned the restaurant, the exception does not apply.

Further, the defendants cannot take the position that Guadalupe Villagran was an "owner" of the business, because the real owner, defendant Rigoberto Melendez, expressly testified that

---

[15] Deposition of Jorge Aranda at 11 (Doc. 43-7).

[16] That is in addition to the other individuals who worked at the restaurant during the short period during which it was open. Deposition of Joel Rosas at 28-29 (Doc. 43-8) (identifying an individual named Chuleta who worked at the restaurant but quit because he was not being paid); Deposition of Raul Mendez at 23-24 (Doc. 43-3) (identifying an individual named Raphael who worked at the restaurant); Deposition of Guadalupe Villagran at 86-87 (Doc. 43-5) (identifying an individual named Benito who worked at the restaurant).

this was not her business. As Mr. Melendez testified in his deposition:

> Q. Are you the owner of La Herradura?
>
> A. Yes.
>
> Q. How long have you been the owner of that business?
>
> A. From the time it opened.[17]

Then, in explaining why he withdrew funds from the restaurant's bank account and deposited those funds into his personal account, Mr. Melendez testified in no uncertain terms that the restaurant was not Guadalupe's, but rather it always had been and still was his:

> Q. But you were still the owner of the business; right?
>
> **A. Yes. And I'm still the owner.**
>
> **Q. So it wasn't Lupita's business?**
>
> **A. No.**[18]

Thus, although there may be a dispute as to whether there was an agreement by the defendants to share in the profits of the restaurant with Guadalupe and, if so, the percentage to be shared, it is clear that she was never made the "owner" of the business. Instead, Mr. Melendez alone was owner of La Herradura, LLC during all periods relevant to this case.[19]  For these reasons, the "Mom and Pop" exception does not apply here.

### III. The Defendants Cannot Request Dismissal of Any Claims Through an Opposition to the Plaintiffs' Motion

Throughout their opposition memorandum, the defendants attempt to piggyback onto the plaintiffs' motion for partial summary judgment by requesting dismissal of the plaintiffs' FLSA

---

[17] Deposition of Rigoberto Melendez at 13 (Doc. 43-2).
[18] Deposition of Rigoberto Melendez at 86 (emphasis added) (Doc. 43-2).
[19] *See also* Plaintiffs' Reply to Defendants Statement of Undisputed Material Facts at Reply to Statement of Fact No. 4.

claims.[20]  There is no cross-motion, and that request is procedurally improper. At most, under Rule 56, if the defendants were to show that there is a dispute of fact or that the plaintiffs are not entitled to judgment as a matter of law, the plaintiffs' motion would simply be denied. However, the Federal Rules of Civil Procedure do not provide for the dismissal of a movant's claim through a request in an opposing party's memorandum. The defendants had the opportunity to file their own motion within the deadlines set by this Court's scheduling order and failed to do so. They cannot bootstrap their way to a dismissal through their opposition to the plaintiffs' motion. Their requests for dismissal should be rejected as procedurally improper and not authorized under the law.

## IV. Conclusion

For the reasons set forth above and in the memorandum in support of this motion, the plaintiffs respectfully request that the Court grant their motion for partial summary judgment on La Herradura's liability for unpaid wages, liquidated damages, attorney fees, and costs.

Respectfully submitted:

Simien & Simien, L.L.C.
Attorneys and Counselors At Law
7908 Wrenwood Boulevard
Baton Rouge, Louisiana 70809
(225) 932-9221; (225) 932-9286 (fax)

    *s/Roy Bergeron, Jr.*
By:    Eulis Simien, Jr., Bar # 12077
        eulissimien@simien.com
        Jimmy Simien, Bar # 1598
        jimmysimien@simien.com
        Roy L. Bergeron, Jr., Bar # 33726
        roybergeron@simien.com

---

[20] *See, e.g.*, Doc. 43 at 9, 14, 19.