# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA
### LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **CAROLINA VILLAGRAN, et al** | § | **CIVIL ACTION NO. 2:22-cv-00170** |
| *Plaintiffs* | § | |
| | § | **JUDGE JAMES D. CAIN, JR.** |
| **V.** | § | |
| | § | **MAGISTRATE JUDGE** |
| **LA HERRADURA LLC and** | § | **KATHLEEN KAY** |
| **RIGOBERTO MELENDEZ** | § | |
| *Defendants* | § | |

---

### DEFENDANTS' PRETRIAL STATEMENT

---

**NOW INTO COURT** comes undersigned counsel on behalf of Defendants, **LA HERRADURA, LLC, RIGO'S ENTERPRISE, LLC, and RIGOBERTO MELENDEZ**, who respectfully submit the following Pretrial Statement in accordance with the Court's Standing Scheduling Order [D.E. 16] and in anticipation of the Pre-Trial Conference set to take place on September 26, 2023 [D.E. 6, p. 2].

## 1.    Jurisdiction

Jurisdiction is currently based upon the existence of a federal question arising under the provisions of the Fair Labor Standards Act, 29 U.S.C. § 2001e *et seq*., and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

Should the Court dismiss Plaintiffs' FLSA claims, however, Defendants submit that the Court will no longer retain subject matter jurisdiction in this case. Not only will the only federal cause of action be extinguished,[1] but there is no actual diversity of citizenship required to

---

[1] Generally, a district court has original jurisdiction over claims that arise under federal law, 28 U.S.C. § 1331, as well as cases that arise under state law and meet certain diversity-of-citizenship and amount-in-controversy requirements, *id.* § 1332. A district court may exercise supplemental jurisdiction over state claims over which it would not have original jurisdiction so long as those claims are "part of the same case or controversy" as the

establish federal jurisdiction pursuant to 28 U.S.C. § 1332. First and foremost, it is undisputed that each of the Defendants is domiciled in Louisiana [D.E. 41, p. 5]. That being said, at the time Plaintiffs filed suit on January 19, 2022, both Guadalupe Villagran and her husband, Francisco Perez, resided in a home they purchased in Lake Charles, Louisiana (Francisco Depo, p. 11-12, 17; Guadalupe Depo, p. 9, 17-19). In order to establish diversity under § 1332, **no** plaintiff can be a citizen of the same state as any of the defendants. *Dos Santos v. Belmere Ltd. Parntership,* 516 Fed. Appx. 401, 403 (5th Cir. 2013) (citing *Wisconsin Dept. of Corr. v. Schacht*, 524 U.S. 381, 388, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998)). Because complete diversity of citizenship did *not* exist at the time suit was filed, Plaintiffs destroyed the complete diversity of citizenship required under § 1332. *Dos Santos,* 516 Fed Appx. at 404; *Coury v. Prot,* 85 F. 2d 244, 248-49 (5th Cir. 1996) (citing *Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 830, 109 S.Ct. 2218, 2221, 104 L.Ed.2d 893 (1989)) (diversity of citizenship must exist at the time the action is commenced).

The parties can never consent to federal subject matter jurisdiction, and lack of such jurisdiction is a defense which cannot be waived. Fed. R. Civ. P. 12(h)(3); *see City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 76, 62 S.Ct. 15, 20, 86 L. Ed. 47 (1941). In the Fifth Circuit, the "'general rule' is that state-law claims should be dismissed after all of the federal-law claims to which they are pendant have been dismissed." *Lamar Tex. Ltd. P'ship v. City of Port Isabel*, No. B-08-115, 2010 WL 441484, at *2 (S.D. Tex. Feb. 3, 2010) (citing *Premiere Network Servs., Inc. v. SBC Commc'ns, Inc.*, 440 F.3d 683, 692 (5th Cir. 2006)); Cudd *Pressure Control Inc. v. Roles*, 328 Fed. App'x 961, 966 n. 2 (5th Cir.2009) ("[T]the district court should keep in mind the Supreme Court's instructions that 'if the federal claims are

---

original-jurisdiction claims. *Id.* § 1367(a). However, once a "district court has dismissed all claims over which it has original jurisdiction," a district court may decline to exercise supplemental jurisdiction over a state claim. *Id.*

dismissed before trial, ... the state claims should be dismissed [or remanded] as well.' ") (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). "When a court dismisses all federal claims before trial, the general rule is to dismiss any [supplemental] claims. However the dismissal should expressly be without prejudice so that the plaintiff may refile in the appropriate state court." *Bass v. Parkwood Hospital*, 180 F.3d 234, 246 (5th Cir.1999). However, notwithstanding this general rule, the Court retains discretion to exercise supplemental jurisdiction over remaining state claims when all federal claims have been dismissed. *Id.* (citing *Carlsbad Tech., Inc. v. HIF Bio, Inc*., 556 U.S. 635, 639, 129 S.Ct. 1862, 173 L.Ed.2d 843 (2009)). When making this decision, a court must balance the Section 1367(c) factors[2] e with the factors of judicial economy, convenience, fairness, and comity. *Id.* (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)).

Based on the foregoing, should the Court dismiss Plaintiffs' FLSA claims, Defendants submit that the Court should decline to retain supplemental jurisdiction and should dismiss all of Plaintiffs' remaining state law claims without prejudice. *See, e.g., Bass,* 180 F.3d at 246.

## 2.   **Pending Motions**

Plaintiffs filed a Motion for Partial Summary Judgment on July 12, 2023 [D.E. 20], which remains pending at this time. Additionally, Defendants intend to object to any exhibits or other evidence listed by Plaintiffs in their Pretrial Statement which constitutes inadmissible evidence no later than fourteen (14) days before trial in accordance with the Court's Standing Order [D.E. 16].

---

[2] [T]he claim raises a novel or complex issue of State law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c).

3.    **Brief Summary of Case**:

Rigoberto Melendez is an owner of La Herradura, LLC, which is the Louisiana liability company that has operated a local Mexican restaurant - the names and management of which have changed over time - at 2624 Gerstner Memorial Drive, Lake Charles, Louisiana (hereinafter the "Gerstner Memorial restaurant"). At all relevant times to the instant wage dispute, La Herradura, LLC owned the restaurant "El Patron" at the Gerstner Memorial location. El Patron was the only restaurant La Herradura, LLC operated during the relevant timeframe.

Mr. Melendez had a longstanding relationship and friendship with Plaintiff, Guadalupe "Lupita" Villagran ("Lupita"), with whom Mr. Melendez lived close to in Mexico for several years. According to Mr. Melendez, any time he would speak with Lupita, she would indicate her desire to open and run a restaurant. In an effort to afford Lupita an opportunity, Mr. Melendez told Lupita that she could open and operate the Gerstner Memorial location under a new restaurant/name. Mr. Melendez instructed Lupita that she would have to clean the tables, kitchen, floor, and coolers, as well as "check to see if everything was working correctly," before opening the restaurant, which had been inoperative for a substantial period of time.

During the conversation, Mr. Melendez indicated to Lupita that she would have to relocate from Texas to Louisiana in order to operate the Gerstner Memorial restaurant. Despite Plaintiff's claim to the contrary, at no time whatsoever did Mr. Melendez ever agree to provide Lupita a down payment for a home or any sort of payment for purchasing a home in Louisiana.

Defendants dispute Plaintiffs' contention that any one or more Plaintiffs performed compensable work from February through June 2021. Moreover, if any one or more Plaintiffs did perform any compensable work, Defendants vehemently dispute the amount of work he or she performed. Moreover, there was no written agreement about compensating any Plaintiff for

cleaning the restaurant prior to it opening in June 2021. Instead, Lupita would simply contact Mr. Melendez, ask for a certain amount per day, in addition to money for food, gas, and hotels, and Mr. Melendez would reach an agreement about the payment for any given day. Mr. Melendez testified that only Lupita and Francisco came to get the restaurant ready (Ex. A, p. 42). According to Mr. Melendez, the remaining Plaintiffs only came to the restaurant "about one or two weeks before the restaurant opened."

Plaintiffs' own testimony creates a materially disputed fact as to 1) whether Defendants ever agreed to pay any Plaintiff for cleaning work performed prior to the opening of El Patron; or 2) the amount of any payment. In her deposition, Lupita asserted that there was an agreement that each person would receive $500.00 per week; however, there is no document, conversation, or correspondence of any kind reflecting such an agreement.

Mr. Melendez paid both Lupita and Francisco for their pre-opening work (Ex. A, p. 43-44, 57-58). Additionally, when Lupita asked Rigoberto for $10,000, "she said that's all you -- we need -- that's all Rigo owe me. And after that, we start like fresh, you know. Like she was paid off with the 10,000. And that's all. [S]he say that she -- that she -- that Rigo owe her."

El Patron opened for business on or about June 14, 2021, and the restaurant ultimately closed on September 8, 2021 - less than three (3) months later. The regular employees of the El Patron establishment were as follows: 1) Lupita; 2) her husband, Francisco Javier Perez; 3) her sister, Carolina Villagran; 4) her brother-in-law, Joel Rosas; and 5) her brother-in-law, Jorge Aranda. Based on record evidence, Defendants dispute that Patricia Villagran was ever an employee of La Herradura LLC d/b/a El Patron or otherwise ever performed any work for the company whatsoever. Mariana Bustos, the individual hired to perform remote payroll services during the relevant timeframe, confirmed that she would receive payroll information for all

employees from Lupita and would simply make pay stubs based on the information provided to her by Lupita. Lupita would send Ms. Bustos a text with the names and hours each person worked, and Ms. Bustos generated stubs based off of whatever Lupita sent her. That being said, Ms. Bustos did not have Patricia Villagran on her employee list for La Herradura, LLC at any time. Additionally, no W-2 or paystubs were issued to Patricia Villagran.

Notwithstanding the dispute regarding Patricia Villagran, according to Mr. Melendez, there was never an agreement on individual employee pay. Mr. Melendez confirmed that Lupita made the decision on how much each person should be paid, and both Mr. Melendez and Mr. Mendez noted their concern that it was far too much. Mr. Mendez actually told Lupita that, at the rates she had decided to pay, the "restaurant would not be able to sustain itself because it wasn't a lot of clients because of the hurricane."

During this timeframe, Plaintiffs tracked their time through Lupita - she was the "one that carried the hours." Lupita was in charge of payroll, and Lupita self-determined the pay rates for her family member-employees. With the sole exception of Carolina Villagran, each of the Plaintiffs confirmed that, irrespective of the hours worked, they were given bi-weekly paychecks in the corresponding amounts. Moreover, accounting records confirm that, while Lupita was charged with submitting the employee time to Ms. Bustos for processing, Lupita never submitted any overtime hours for any Plaintiff. Instead, notwithstanding Carolina, Lupita paid Plaintiffs a straight, bi-weekly rate, irrespective of hours worked.

Lupita confirmed that, not only the waitresses, but the entire family shared the tips. Not only that, but Lupita indicated that, when the restaurant first opened, she was paying everyone's wages in cash. After a month of Lupita paying wages in cash, Lupita informed Mr. Mendez of

the same. After immediately instructing Lupita that cash payments were improper, Mr. Mendez connected her with Ms. Bustos to assist with proper accounting going forward.

Plaintiffs' testimony creates a disputed fact as to how much, if anything, the parties agreed to re: bi-weekly rates. As the individual who determined the rates, Lupita testified that Plaintiffs earned the following, bi-weekly rates: 1) Francisco Perez - $1,500; 2) Jorge Aranda - $1,600; 3) Joel Rosas - $1,500; 4) Carolina Villagran - $300 for waitressing;   5) Patricia Villagran - $800; and 6) Lupita - $1,500. Patricia Villagran, however, testified that she was entitled to bi-weekly payments of $1,200.00, in addition to tips. Carolina Villagran could not provide any clarification, aside from stating that she would receive $100 in cash for each day worked as a cashier, regarding her pay rates. There is also no record whatsoever as to which days Carolina worked as a waitress, as opposed to a cashier.

Due to lack of funds to continue operation, El Patron ceased operation on or about September 8, 2021. Less than two days later, on September 10, 2021, Mendez sent the following message (translated) to Lupita:

> I am going tomorrow. Give me directions where to send the payments of the boys.
> I am going to get the checkbook. You tell me at the address of the new Benito or
> his phone number.

Lupita clarified that the original text contained several grammatical errors and interpreted the text to mean the following:

> I am going tomorrow just in case you want to give me the addresses where to send
> the payment of the boys. I am going to get the checkbook. You let me know and
> the address of the new Benito[3] or his phone number.

Instead of agreeing to meet with Mendez to collect any outstanding payment, Lupita sent the following response (translated):

---

[3] According to Lupita, Benito came to help at the restaurant for three (3) weeks and had been paid in cash.

> Raul, this is a good feeling. My lawyer tells me not to speak with you nor no one. Nor Rigo. That they will take care of everything. They only ask me for all the receipts that I paid and the original stubs. I already gave everything. The department of labor is going to communicate with you to see everything.

Despite Mr. Mendez's good faith attempt to meet with Lupita and pay outstanding wages for the last two pay periods, Lupita refused to meet with Mr. Mendez. Instead, the instant suit followed.

Plaintiffs claim that they are entitled to unpaid minimum wages and overtime hours for work allegedly performed between February 2021 and September 8, 2021. First, Defendants dispute that Plaintiffs are subject to the protections of the FLSA, as Plaintiffs do not qualify for individual or enterprise coverage required by the statute. Alternatively, to the extent the FLSA is found to apply to Plaintiff's claims, Plaintiff's LWPA claims are preempted as a matter of law.

Legal framework notwithstanding, Defendants submit that Plaintiffs: 1) were either already compensated wages due; or 2) Plaintiffs cannot meet their burden of showing what amounts, if any, to which they are entitled, especially in light of evidence suggesting that Plaintiffs were oftentimes paid in cash, which was never tracked. Plaintiffs also contend, without a shred of documentary evidentiary support, that Rigoberto Melendez contractually obligated himself to pay for various expenses, including down payments on Plaintiffs' Louisiana homes. Defendants wholly dispute this contention and deny any agreement to pay any portion of home down-payments or related expenses.

Defendants submits that Plaintiffs cannot meet their evidentiary burdens under the FLSA (to the extent the statute even applies) and cannot show that Defendants otherwise agreed to: 1) compensate them anything for "time" allegedly spent "working" from February 2021 through June 14, 2021.

With respect to Plaintiffs' request that they receive their final two paychecks' worth of wages, Defendants submit that Defendants attempted to timely pay them wages due for those pay periods and that Guadalupe Villagran, lead Plaintiff, intentionally and deliberately refused to accept prompt payment, deciding instead to initiate suit.

**4.     Issues of Fact:**

1. Whether Guadalupe Villagran was domiciled in Texas or Louisiana at the time suit commenced in January 2022;

2. Whether Francisco Javier Angel Perez was domiciled in Texas or Louisiana at the time suit commenced in January 2022;

3. Whether there was an agreement that Guadalupe Villagran act as a co-owner of La Herradura LLC d/b/a El Patron;

4. Whether Carolina Villagran performed any compensable work of any kind from February 2021 through June 14, 2021;

5. Whether or not there was any agreement to compensate Carolina Villagran for any services performed from February 2021 through June 14, 2021;

6. If there was any agreement to compensate Carolina Villagran for any services performed from February 2021 through June 14, 2021, the amount of agreed-upon compensation;

7. Whether Patricia Villagran performed any compensable work of any kind from February 2021 through June 14, 2021;

8. Whether or not there was any agreement to compensate Patricia Villagran for any services performed from February 2021 through June 14, 2021;

9. If there was any agreement to compensate Patricia Villagran for any services performed from February 2021 through June 14, 2021, the amount of agreed-upon compensation;

10. Whether Guadalupe Villagran performed any compensable work of any kind from February 2021 through June 14, 2021;

11. Whether or not there was any agreement to compensate Guadalupe Villagran for any services performed from February 2021 through June 14, 2021;

12. If there was any agreement to compensate Guadalupe Villagran for any

services performed from February 2021 through June 14, 2021, the amount of agreed-upon compensation;

13. Whether Joel Rosas performed any compensable work of any kind from February 2021 through June 14, 2021;

14. Whether or not there was any agreement to compensate Joel Rosas for any services performed from February 2021 through June 14, 2021;

15. If there was any agreement to compensate Joel Rosas for any services performed from February 2021 through June 14, 2021, the amount of agreed-upon compensation;

16. Whether Francisco Perez performed any compensable work of any kind from February 2021 through June 14, 2021;

17. Whether or not there was any agreement to compensate Francisco Perez for any services performed from February 2021 through June 14, 2021;

18. If there was any agreement to compensate Francisco Perez for any services performed from February 2021 through June 14, 2021, the amount of agreed-upon compensation;

19. Whether Jorge Aranda performed any compensable work of any kind from February 2021 through June 14, 2021;

20. Whether or not there was any agreement to compensate Jorge Aranda for any services performed from February 2021 through June 14, 2021;

21. If there was any agreement to compensate Jorge Aranda for any services performed from February 2021 through June 14, 2021, the amount of agreed-upon compensation;

22. Who, if anyone, set the pay rate for each Plaintiff.

23. To the extent any Plaintiff requested compensation or expense reimbursements from February 2021 through June 14, 2021, Guadalupe Villagran settled and/or compromised that claim by stating that $10,000.00 was sufficient to cover all outstanding wages and expenses and accepting the same;

24. Whether there was any agreement to compensate Guadalupe Villagran a commission based on the performance of El Patron;

25. If there was an agreement to compensate Guadalupe Villagran a commission, the percentage and/or amount of said commission;

26. Whether Rigoberto Melendez promised any Plaintiff whether he would cover their travel costs;

27. Whether Rigoberto Melendez promised any Plaintiff that he would pay his or her down payment on the purchase of a home in Louisiana;

28. Which dates, if any, Plaintiff(s) traveled to and from Texas to Louisiana from February 2021 through June 14, 2021;

29. The purpose of the two checks, totaling approximately $14,000.00, given to Plaintiffs;

30. Whether Guadalupe Villagran paid Plaintiffs out of her own personal funds (and, if so, how much);

31. The times and dates, if any, Carolina Villagran performed work for El Patron from June 14, 2021 through September 8, 2021;

32. Whether or not there was any agreement to compensate Carolina Villagran for any services performed from June 14, 2021 through September 8, 2021;

33. If there was any agreement to compensate Carolina Villagran for any services performed from June 14, 2021 through September 8, 2021, the amount of agreed-upon compensation;

34. The times and dates, if any,  Patricia Villagran performed work for El Patron from June 14, 2021 through September 8, 2021;

35. Whether or not there was any agreement to compensate Patricia Villagran for any services performed from June 14, 2021 through September 8, 2021;

36. If there was any agreement to compensate Patricia Villagran for any services performed from June 14, 2021 through September 8, 2021, the amount of agreed-upon compensation;

37. The times and dates, if any, Guadalupe Villagran performed work for El Patron from June 14, 2021 through September 8, 2021;

38. Whether or not there was any agreement to compensate Guadalupe Villagran for any services performed from June 14, 2021 through September 8, 2021;

39. If there was any agreement to compensate Guadalupe Villagran for any services performed from June 14, 2021 through September 8, 2021, the amount of agreed-upon compensation;

40. The times and dates, if any, Francisco Perez performed work for El Patron from June 14, 2021 through September 8, 2021;

41. Whether or not there was any agreement to compensate Francisco Perez for any services performed from June 14, 2021 through September 8, 2021;

42. If there was any agreement to compensate Francisco Perez for any services performed from June 14, 2021 through September 8, 2021, the amount of agreed-upon compensation;

43. The times and dates, if any, Joel Rozas performed work for El Patron from June 14, 2021 through September 8, 2021;

44. Whether or not there was any agreement to compensate Joel Rozas for any services performed from June 14, 2021 through September 8, 2021;

45. If there was any agreement to compensate Joel Rozas for any services performed from June 14, 2021 through September 8, 2021, the amount of agreed-upon compensation;

46. The times and dates, if any, Jorge Aranda performed work for El Patron from June 14, 2021 through September 8, 2021;

47. Whether or not there was any agreement to compensate Jorge Aranda for any services performed from June 14, 2021 through September 8, 2021;

48. If there was any agreement to compensate Jorge Aranda for any services performed from June 14, 2021 through September 8, 2021, the amount of agreed-upon compensation;

49. Who determined the rates to be paid to Plaintiffs.

50. Whether or not Guadalupe submitted the timesheets commensurate with the time Plaintiffs actually performed work;

51. Whether or not Plaintiffs received any wages, commission, or other amounts for any services performed from February 2021 through September 8, 2021;

52. If any one or more Plaintiffs received any wages, commission, or other amounts for any services performed from February 2021 through September 8, 2021, the amount of said compensation;

53. Whether Plaintiffs used their own funds to purchase food, drinks, and other goods to be used in the operation of the business and, if so, in what amounts;

54. Whether Rigoberto Melendez commingled personal funds with business funds

or otherwise treated La Herradura, LLC as his alter ego;

55. Whether Plaintiffs, or any third party, is the victim of fraud, breach of professional duty, negligence, or another wrongful act by Rigoberto Melendez necessary to warrant piercing the corporate veil of La Herradura, LLC;

56. Whether Rigoberto Melendez used La Herradura, LLC to "defeat public convenience, justify wrong, protect fraud, or defend crime" necessary to warrant piercing the corporate veil of La Herradura, LLC;

57. Whether "adherence to the corporate form would clearly result in inequity," which would warrant piercing the corporate veil of La Herradura, LLC;

58. Whether any "evidence of misuse of corporate privilege" exists to warrant piercing the corporate veil of La Herradura, LLC;

59. Whether Rigoberto Melendez "disregarded the corporate entity to such an extent that it ceased to become distinguishable" from him, as is required to pierce the corporate veil, absent allegations of fraud, under the alter ego doctrine;

60. Whether any funds withdrawn from the Capital One Bank Account were disbursed directly to Rigoberto Melendez and/or Raul Melendez, and, if so, the reason(s) therefor;

61. The purpose of the $14,810.00 withdrawal made from the Capital One Bank Account on or about July 19, 2021;

62. The purpose of the $9,000.00 withdrawal made from the Capital One Bank Account on or about July 26, 2021;

63. The purpose of the $6,500.00 check written to Valentinos on or about July 6, 2021;

64. Whether La Herradura, LLC and Rigo's Enterprise, LLC constitute a "single business enterprise" under the totality of circumstances;

65. Whether La Herradura, LLC is engaged in interstate commerce;

66. Whether La Herradura, LLC earned more than $500,000.00 in gross annual sales;

67. Whether Plaintiffs were engaged in interstate commerce;

68. Whether Defendants knew that Plaintiffs "worked regular and overtime hours during the employment without proper compensation" in violation of the

FLSA;

69. Whether Defendants "willfully failed and refused to pay Plaintiffs" minimum and/or overtime wages in violation of the FLSA;

70. Whether Plaintiffs made demands of any kind of unpaid wages pursuant to La. R.S. 23:631 *et seq.* and, if so, in what amount;

71. Whether any Defendant contracted with any Plaintiff and, if so, the terms of the alleged contract;

72. Whether any Defendant breached any provision of any contracted entered into with any Plaintiff;

73. Whether any Defendant acted in bad faith;

74. Whether Plaintiffs are entitled to any damages, including any unpaid wages, commissions, and/or out-of-pocket costs/expenses and, if so, in what amount;

75. Whether Defendants kept incomplete or inaccurate records and, if so, whether the record retention was entrusted with and carried out entirely by Plaintiff, Guadalupe Villagran;

76. Whether Plaintiffs have met their burden of proving, with definite and certain evidence, that they performed work for which they were not properly compensated;

77. Whether Plaintiffs have produced sufficient evidence to show the amount and extent of work allegedly performed as a matter of just and reasonable inference.

**5.** **Issues of Law:**

1. Whether Plaintiffs have met their burden of proving that La Herradura, LLC is an "employer" as defined by the FLSA;

2. Whether Plaintiffs have met their burden of proving that Rigoberto Melendez is an "employer" as defined by the FLSA;

3. Whether Rigoberto Melendez is an "employer" contemplated by LWPA;

4. Whether Plaintiffs have met their burden of proving that Plaintiffs are entitled to the protections of the FLSA;

5. To the extent Plaintiffs' FLSA claims remain, whether Plaintiffs' LWPA claims are preempted by the FLSA;

6.  Whether Defendants kept incomplete or inaccurate records and, if so, whether the record retention was entrusted with and carried out entirely by Plaintiff, Guadalupe Villagran;

7.  Whether Plaintiffs have met their burden of proving, with definite and certain evidence, that they performed work for which they were not properly compensated;

8.  Whether Plaintiffs have produced sufficient evidence to show the amount and extent of work allegedly performed as a matter of just and reasonable inference;

9.  Whether Defendants knew that Plaintiffs "worked regular and overtime hours during the employment without proper compensation" in violation of the FLSA;

10. Whether Defendants "willfully failed and refused to pay Plaintiffs" minimum and/or overtime wages in violation of the FLSA;

11. Whether Plaintiffs' FLSA claims are subject to a two or three-year prescriptive period;

12. Whether Plaintiffs are entitled to unpaid minimum wage compensation pursuant to the FLSA and, if so, in what amount;

13. Whether Plaintiffs are entitled to unpaid overtime compensation pursuant to the FLSA and, if so, in what amount;

14. Whether Plaintiffs are entitled to liquidated damages pursuant to the FLSA and, if so, in what amount;

15. Whether Defendants failed to pay Plaintiffs "all amounts due" to Plaintiffs in violation of La. R.S. 23:631 *et seq*. and, if so, in what amount;

16. Whether Plaintiffs are entitled to any penalty wages, attorney's fees, or costs pursuant to La. R.S. 23:632;

17. Whether any Defendant entered into any contract with Plaintiff and, if so, the terms of said contract;

18. Whether any Defendant breached any term or provision of any contract entered into with any Plaintiff;

19. Whether any Defendant was unjustly enriched;

20. Whether Plaintiffs can sustain a claim of detrimental reliance;

21. Whether Plaintiffs can sustain a claim of promissory estoppel;

22. Whether Plaintiffs are entitled to any damages, including any unpaid wages, commissions, and/or out-of-pocket costs/expenses;

23. Whether Plaintiffs are entitled to costs and/or attorney's fees;

24. Whether Plaintiffs are entitled to any pre and/or post-judgment interest;

25. Whether Defendants operated as one another's alter egos;

26. Whether the entities collectively operated as a single business enterprise; and

27. To the extent Guadalupe Villagran is found to be a co-owner of El Patron, whether any judgment against El Patron should be offset or otherwise reduced for Guadalupe's fault, unclean hands, or other acts (intentional or negligent) that in any way contributed to the liability at issue.

**6.**    **Lists of Witnesses:**   Please list all witnesses, except for impeachment witnesses; "will call" witnesses must be identified with particularity. Include names, telephone numbers, addresses, and email addresses, if available.

Defendants will call or will have available at trial the following witnesses. In addition to those witnesses identified on the following list, Defendants reserve the right to call additional witnesses as may be necessary to authenticate evidence or otherwise address evidentiary issues, in the event that appropriate stipulations cannot be reached. In keeping with the Court's Order, Defendants' current witness list contains the following:

1.  Rigoberto Melendez
    Tel: (504) 578-2795
    Address: 550 MacArthur Drive, Alexandria, LA 71303

    Mr. Melendez, as Defendant, will offer testimony regarding Defendants' defenses to all Plaintiffs' claims, including his own communications and interactions with other Defendants and Plaintiffs.

2.  Raul Mendez
    Tel: (479) 831-8974
    Address: 109 Rue Donahue, Pineville LA 71360

Mr. Mendez will offer testimony regarding Defendants' defenses to all Plaintiffs' claims, including his own communications and interactions with other Defendants and Plaintiffs.

3.  Mariana Bustos
    Email: marbustos92@gmail.com
    Address: 2021 East Yandell, El Paso, Texas 79903

    Mr. Bustos has knowledge of her own interactions with Guadalupe Villagran pertaining to the work hours recorded on behalf of all Plaintiffs.

4.  Guadalupe Yesenia Villagran
    Address: 2333 17th Street, Lake Charles, LA 70601
    May be contacted through Plaintiffs' Counsel.

    Ms. Villagran has knowledge of her own communications, agreements/contracts, work schedule, and compensation.

5.  Carolina Villagran
    Address: 2354 14th Street, Lake Charles, LA 70601
    May be contacted through Plaintiffs' counsel.

    Ms. Villagran has knowledge of her own communications, agreements/contracts, work schedule, and compensation.

6.  Patricia Villagran
    Address: 19809 Per Lange Pass, Austin, TX 78653
    May be contacted through Plaintiffs' counsel.

    Ms. Villagran has knowledge of her own communications, agreements/contracts, work schedule, and compensation.

7.  Francisco Perez
    Address: 2333 17th Street, Lake Charles, LA 70601
    May be contacted through Plaintiffs' counsel.

    Mr. Perez has knowledge of his own communications, agreements/contracts, work schedule, and compensation.

8.  Joel Rosas
    Address: 2354 14th Street, Lake Charles, LA 70601
    May be contacted through Plaintiffs' counsel.

    Mr. Rosas has knowledge of his own communications, agreements/contracts, work schedule, and compensation.

9. Jorge Aranda
18221 Canopy Lane, Manor, TX 78653
May be contacted through Plaintiffs' counsel.

Mr. Aranda has knowledge of his own communications, agreements/contracts, work schedule, and compensation.

10. Any and all witnesses identified by Plaintiffs through the course of initial disclosures, interrogatories, requests for production of documents, requests for admission, depositions, third-party requests via authorizations and/or subpoenas *duces tecum*, and motions practice;

11. Any and all witnesses necessary to authenticate documents produced by Plaintiffs or Defendants through the course of initial disclosures, interrogatories, requests for production of documents, requests for admission, depositions, third-party requests via authorizations and/or subpoenas *duces tecum* and motions practice;

12. Any witnesses necessary for impeachment; and

13. Any witnesses necessary for rebuttal.

Defendants reserves their rights under the Federal Rules of Civil Procedure to supplement this list as information becomes available, up to and through the trial of this matter.

7. __List of Exhibits__:  All exhibits should be made available to opposing counsel as soon as possible. All objections to authenticity or admissibility must be made 14 days prior to trial.

Defendants may introduce the following exhibits into evidence at the trial of this matter:

1. Miscellaneous Receipts (Plaintiffs000001-000084, 000123-000130, 000132-000150, 000152);

2. Check No. 1868 to Realty Source (dated April 13, 2021) (Plaintiffs000029);

3. Guadalupe Villagran Handwritten Notes (Plaintiffs000085-000091,000131, 000151, 000152, 000207-000208);

4. Capital One Bank Check Detail for Period July 01, 2021 - July 30, 2021 for Checking 5392 (Plaintiffs000092-000093);

5. Capital One Bank Check Detail for Period June 01, 2021 - June 30, 2021 for Checking 5392 (Plaintiffs000094);

6. Capital One Notice dated September 1, 2021 (Plaintiffs000095-000096);

7. Capital One Notice dated August 31, 2021 (Plaintiffs000097-000098);

8. Capital One Bank Account Summary for Period December 1, 2020 - December 31, 2020 (Herradura/Melendez 025-027);

9. Capital One Bank Account Summary for Period January 1, 2021 - January 29, 2021 (Herradura/Melendez 069-070);

10. Capital One Bank Account Summary for Period February 1, 2021 - February 26, 2021 (Herradura/Melendez 066-068);

11. Capital One Bank Account Summary for Period March 1, 2021 - March 31, 2021 (Herradura/Melendez 063-065);

12. Capital One Bank Account Summary for Period April 1, 2021 - April 30, 2021 (Herradura/Melendez 061-062);

13. Capital One Bank Account Summary for Period May 1, 2021 - May 28, 2021 (Herradura/Melendez 058-060);

14. Capital One Bank Account Summary for Period June 01, 2021 - June 30, 2021 (Plaintiffs000117-000122; Herradura/Melendez 054-057);

15. Capital One Bank Account Summary for Period July 01, 2021 - July 30, 2021 (Plaintiffs000109-000116; Herradura/Melendez 049-053);

16. Capital One Bank Account Summary for Period August 01, 2021 - August 31, 2021 (Plaintiffs000099-000108; Herradura/Melendez 042-048);

17. Capital One Bank Account Summary for Period September 1, 2021 - September 30, 2021(Herradura/Melendez 037-041);

18. Capital One Bank Account Summary for Period October 1, 2021 - October 29, 2021(Herradura/Melendez 033-036);

19. Capital One Bank Account Summary for Period November 1, 2021 - November 30, 2021 (Herradura/Melendez 030-032);

20. Capital One Bank Account Summary for Period December 1, 2021 - December 31, 2021 (Herradura/Melendez 028-029);

21. Capital One Bank Notice re: Checks Returned as Unpaid for Jorge Aranda (Plaintiffs000154);

22. Sysco Credit Application and emails (Plaintiffs000157-000160);

23. Emails regarding W-4s (Plaintiffs000161-000162);

24. Louisiana Department of Revenue Correspondence re: Sales Tax Certificate (Plaintiffs000163-000166);

25. Carolina Villagran Pay Stub for periods 06/27/2021-07/10/2021, 07/11/2021-07/24/2021, 07/25/2021-08/07/2021 (Plaintiffs000167, 000172, 000202);

26. Guadalupe Villagran Pay Stub for periods 06/27/2021-07/10/2021, 07/11/2021-07/24/2021,07/25/2021-08/07/2021 (Plaintiffs000168, 000173, 000204);

27. Francisco Perez Pay Stub for periods 06/27/2021-07/10/2021, 07/11/2021-07/24/2021, 07/25/2021-08/07/2021 (Plaintiffs000169, 000174, 000203);

28. Joel Rosas Pay Stub for periods 06/27/2021-07/10/2021, 07/11/2021-07/24/2021, 07/25/2021-08/07/2021 (Plaintiffs000170, 000175, 000205);

29. Jorge Aranda Pay Stub for periods 06/27/2021-07/10/2021, 07/11/2021-07/24/2021, 07/25/2021-08/07/2021 (Plaintiffs000171, 000176, 000206);

30. Photographs of Restaurant Taken by Plaintiffs (Plaintiffs000177-000188);

31. Realty Source Notice dated March 24, 2021 (Plaintiffs000189);

32. Text Message Screenshots from Raul Mendez (Plaintiffs000190-000196);

33. Email Exchange Between Guadalupe Villagran and Mariana Bustos re:  Payroll for July 15, 2021 (Plaintiffs000200)

34. House Documents (Plaintiffs000209-000214);

35. Text messages beween Mariana Bustos and Guadalupe Villagran (Plaintiffs000215-000219);

36. July Sales Report from Guadalupe Villagran (Plaintiffs000217);

37. Plaintiff's 2021 W-2 documents (Herradura/Melendez 001, 005, 009, 013, 017);

38. Text Message Exchange with Guadalupe Villagran (Herradura/Melendez 021, 071-072);

39. Check No. 1869 dated 4-8-21 (Herradura/Melendez 022);

40. Check No. 1867 dated 4-19-21 (Herradura/Melendez 023);

41. Check No. 11040 dated 6/20/21 and Check No. 11070 dated 6/16/21 (Herradura/Melendez 024);

42. Videos of Restaurant;

43. Plaintiffs' Second Superseding and Amending Complaint for Damages [D.E. 23];

44. Plaintiff's Initial Disclosures (dated October 13, 2022);

45. Carolina Villagran's Objections and Answers to Defendants' First Set of Interrogatories and Requests for Production of Documents (dated April 14, 2023);

46. Francisco Javier Angel Perez's Objections and Answers to Defendants' First Set of Interrogatories and Requests for Production of Documents (dated April 14, 2023);

47. Joel Rosas' Objections and Answers to Defendants' First Set of Interrogatories and Requests for Production of Documents (dated April 14, 2023);

48. Jorge Aranda's Objections and Answers to Defendants' First Set of Interrogatories and Requests for Production of Documents (dated April 14, 2023);

49. Patricia Villagran's Objections and Answers to Defendants' First Set of Interrogatories and Requests for Production of Documents (dated April 14, 2023);

50. Guadalupe Villagran's Objections and Answers to Defendants' First Set of Interrogatories and Requests for Production of Documents (dated August 11, 2023);

51. Defendants' Initial Disclosures (dated October 14, 2022);

52. Defendants' Responses to Plaintiffs' First Set of Interrogatories and Requests for Production of Documents (dated January 9, 2023);

53. Defendants' Amended Initial Disclosures (dated February 14, 2023);

54. Any documents that have been sought, but have not been received, by Defendants pursuant to authorizations previously provided by Plaintiff;

55. Any non-privileged document sought, identified, and/or produced through discovery of Plaintiffs and/or Defendants including interrogatories, requests for production, requests for admission, depositions, affidavit, declaration, document productions, and third-part records sought through authorizations and/or subpoenas *duces tecum*;

56. Any document produced by Plaintiffs;

57. Any document needed for authentication;

58. Any document needed for rebuttal; and

59. Any document needed for impeachment.

Defendants reserves their right under the Federal Rules of Civil Procedure to supplement this list as information becomes available, up to and through the trial of this matter.

**8.**     **<u>Depositions</u>:**   List all depositions that may be offered in whole or in part. If in part, specify the part that will be offered by page and line numbers. Opposing counsel shall make any objections 14 days prior to trial.

Defendants do not anticipate offering any part of any deposition transcript at the trial of this matter; however, Defendants reserve the right to do so, for impeachment or any other admissible purpose, for any individual who provided deposition testimony in this case including, but not limited to Plaintiffs, Raul Mendez, Rigoberto Melendez, and/or Mariana Bustos.

**9.**     **<u>Stipulations</u>:**   State or attach any stipulations already agreed upon by counsel.

To date, the parties have not agreed on any stipulations for trial.

**10.**    **<u>Estimated Length of Trial</u>:** Based upon the number of issues and claims involved in this suit, as well as the number of witnesses each side intends to call, Defendants request three (3) days for trial.

**11.**    **<u>Other Matters that Should be Made Known to the Court</u>:**

Several of the Plaintiffs, as well as Rigoberto Melendez, will require a translator. This, in turn, may require additional time for trial.

| | |
|---|---|
| 9/12/2023 | /s/ James E. Sudduth, III |
| (Date) | (Signature) |
| | James E. Sudduth, III |
| | (Printed Name) |