UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **CAROLINA VILLAGRAN ET AL** | **CASE NO. 2:22-CV-00170** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **LA HERRADURA L L C ET AL** | **MAGISTRATE JUDGE KAY** |

**MEMORANDUM RULING**

Before the Court is a "Motion for Partial Summary Judgment Finding Defendant Liable for Unpaid Minimum Wages, Liquidated Damages, Attorney Fees, and Costs" (Doc. 20) filed by Plaintiffs in this lawsuit. The matter is set as a bench trial on October 10, 2023.

**FACTUAL STATEMENT**

Rigoberto Melendez is an owner of La Herradura, LLC, ("La Herradura") that operated the El Patron Restaurant (hereinafter referred to as the "Restaurant") in Lake Charles, Louisiana. There is a factual dispute as to whether or not Plaintiff, Guadalupe Yesenia Villagran was a partial owner, and/or just a manager/server of the Restaurant.[1]

Plaintiffs Carolina Villagran, Guadalupe Yesenia Villagran ("Lupita"), Joel Isai Rosas, Francisco Javier angel Perez, and Jorge Alejandro Aranda and Patricia Villagran worked in the Restaurant from June 14, 2021 through September 8, 2021. There is a factual disputed as to whether or not Patricia Villagran was an employee of the Restaurant; there are no payroll records or W-2s regarding Patricia.[2]

---

[1] See Defendant's Statement of Fact #4; Defendant's exhibit D, pp. 23-24 (In her deposition, Guadalupe claims to also be a part owner of the Restaurant, but as noted by Plaintiff, there are no supporting documents as to her claim).
[2] Defendant's exhibit C, pp. 23-24.

The Plaintiffs worked in various positions in the Restaurant as servers, managers, cooks and dishwashers.³ The parties dispute that Plaintiffs are still owed "something" under the Fair Labor Standards Act ("FLSA") for the work they performed while employed for the Restaurant. The Plaintiffs were not paid for their last four (4) week of employment. The owner of the Restaurant, Rigoberto Mendez admits that the employees are owed money for their last four (4) weeks of employment. However, the dispute as to this Motion is whether or not the employees are covered under the Fair Labor Standards Act.

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State*

---

³ The parties dispute the specific position of each Plaintiff, however, the Court finds that for purposes of this motion, that dispute is not relevant. Defendant again disputed that Patricia was an employee of the Restaurant.

*Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## LAW AND ANALYSIS

For purposes of this Motion, Plaintiffs maintain that La Herradura, violated the minimum wage provisions of the FLSA and is liable to each Plaintiff for unpaid minimum wages of $7.25 per hour for each hour worked the final four (4) weeks of their employment, and an additional amount equal to those unpaid wages as liquidated damages, reasonable attorney fees and costs. 29 U.S.C. § 216(b). The sole purpose of this Motion is whether or not La Herradura violated the FLSA for a discrete period of time, but not as to the exact amount allegedly owed, which Plaintiffs maintain will be determined at the trial of this matter. The final four (4) weeks of Plaintiffs' employment is what is at issue in this Motion.

Plaintiffs submit and rely on the deposition testimony of Rigoberto Mendez who testified as follows:

> Q. I know earlier you said that you didn't dispute that some amounts were due. But you do dispute the claim in that text message there were two biweekly payments that are still due?
>
> A. Yes. Two biweekly payments, yes.
>
> Q. Let me make sure the record is clear on what the yes means. It's a yes, he agrees that amount is due.?
>
> A. Yes.[4]

Consequently, Plaintiffs argue that they are entitled to a ruling by this Court finding that as a matter of law, La Herradura violated the minimum wage provisions of the FLSA by failing to pay Plaintiffs any amounts at all for hours worked the last four (4) weeks of their employment. Thus, they maintain that La Herradura is liable as a matter of law for all unpaid minimum wages owed to each of the Plaintiffs for those four weeks, liquidated damages, attorney fees and costs.

The FLSA sets a minimum wage of $7.25 for employees engaged in commerce. 29 U.S.C. § 206(a)(1). Although the FLSA allows employers to pay certain employees, including servers, $2.13 per hour, the employer must still ensure that such employees ultimately receive at least the $7.25 minimum wage after tips are included in the calculation. 29 U.S.C. § 203(m); *Montano v. Montrose Rest. Associates, Inc.*, 800 F.3d 186, 188 (5th Cir. 2015). The burden is on the employer to establish its entitlement to any alleged "tip credit." *Steele v. Leasing Enterprises, Ltd.*, 826 F.3d 237, 242 (5th Cir. 2016). The FLSA provides a cause of action for employees against their employers for violation

---

[4] Plaintiff's exhibit A, R. Melendez deposition, p. 80:1-9.

of the statutory requirement to pay the federal minimum wage. 29 U.S.C. § 216(b). An employee's right to recover for violations of the minimum wage provision of the FLSA cannot be waived. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945).

Plaintiffs argue that under the FSLA, they were entitled to minimum wage ($7.25) for the hours worked the last four weeks of their employment. They inform the Court that La Herradura has failed to provide any records of tips for those employee/servers who could potentially have been paid $2.13 per hours, to show that they were paid at least $7.25 per hour.

Plaintiffs also argue that La Herradura is liable for liquidated damages. Under 29 U.S.C. 216(b), an employer who violates its duty to pay minimum wages is also liable for liquidated damages in an amount equal to the amount of unpaid minimum wages owed to the employee. 29 U.S.C. § 260 provides an exception for the Court to decline an award or reduce the amount of the liquidated damages if the employer can carry its "substantial burden" of proving that it acted in good faith and had reasonable grounds to believe that its actions complied with the FSLA. *Singer v. City of Waco, Tex.*, 324 F.3d 813, 822-23 (5th Cir. 2003) (quoting 29 U.S.C. § 260).

Plaintiffs argue that La Herradura had no excuse for its failure to pay Plaintiffs for the hours worked during the last four weeks of their employment.

Defendants remark that Lupita determined the amount to be paid to each employed and that she reported same to Ms. Bustos all hours worked by Plaintiffs, (excluding Patricia Villagran, which Defendant disputes was an employee). Lupita determined that amount of hours and rate as to each employee, which again she reported to Ms. Bustos. Furthermore,

Lupita reported no overtime, and that the employees, who were allegedly all family members shared all of the tips. Defendants submit summary judgment evidence that Lupita paid the employees a straight, bi-weekly rate, irrespective of the hours worked, as follows: (1) Francisco Perez - $1,500; (2) Jorge Aranda - $1,600; (3) Joel Rosas - $1,500; (4) Carolina Villagran - $300, (5) Patricia Villigran - $800 and (6) Lupita - $1,500.

Due to a lack of funds to continue operating, the Restaurant ceased operations on or about September 8, 2021. Defendants submit a colloquy of text messages wherein Rigoberto offered to meet with Lupita after the closure to pay the employees, but Lupita refused and instead filed the instant lawsuit.[5]

As noted by Defendant, Plaintiffs seek only a ruling on its FSLA claims and the last four (4) weeks of their employment. Defendants argue that the Motion for Partial Summary Judgment should be denied because Plaintiffs have not established coverage under the FLSA based on either individual coverage or enterprise coverage.

The employee bears the burden of establishing entitlement to the FLSA's protections. See *Sobrinio v. Med. Ctr. Visitor's Lodge, Inc.*, 474 F.3d 828, 829 (5th Cir. 2007) (per curiam). To establish this burden, an employee must demonstrate that: (1) she personally engaged in commerce or the production of goods for commerce ("individual coverage") or (2) she worked for an enterprise engaged in such activity ("enterprise coverage"). *Martin v. Bedell*, 955 F.2d 1029, 1032 (5th Cir. 1992). See 29 U.S.C. § 206(a)(1) and 29 U.S.C. § 207(a)(1) for the terms "individual coverage" and "enterprise

---

[5] Defendant's exhibit K.

coverage," See, e.g., *Martin*, 955 F.2d 1029, 1032 (5th Cir.), *cert. denied*, 506 U.S. 915, 113 S.Ct. 323, 121 L.Ed.2d 243 (1992). Either individual or enterprise coverage is enough to invoke FLSA protection. *Martin v. Bedell*, 955 F.2d 1029, 1032 (5th Cir.), *cert. denied*, 506 U.S. 915, 113 S.Ct. 323 (1992).

An FLSA claim requires that: (1) an employer-employee relationship existed during the claimed unpaid overtime periods; (2) the employee was involved in activities within FLSA coverage; (3) the employer violated the wage requirement; and (4) the amount of compensation owed. *Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014).

*Individual coverage*

Plaintiffs maintain that there is FSLA coverage because La Herradura failed to pay the employees for their last four weeks of employment. Defendant argues that there is no FSLA coverage because the Restaurant was not "engaged in commerce." Moreover, Plaintiffs have failed to produce evidence to show that their work was directly related to interstate commerce under the FSLA

The phrase "employees who in any workweek [are] engaged in commerce or in the production of goods for commerce" is not statutorily defined. Courts in the Fifth Circuit have interpreted the "engaged in commerce" language in 29 U.S.C. §§ 206(a)(1) and 207(a)(1) by applying a "practical test," which looks to whether an employee's work "is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity." See *Sobrinio*, 474 F.3d at 829 (quoting *Mitchell v. H.B. Zachry Company*, 362 U.S. 310, 324,

80 S.Ct. 739, 4 L.Ed.2d 753 (1960). The Supreme Court has also explained that the test is whether "the employee's activities ... are actually in or so closely related to the movement of the commerce as to be a part of it." *McLeod v. Threlkeld*, 319 U.S. 491, 497, 63 S.Ct. 1248, 87 L. Ed. 1538 (1943). It is settled that Congress did not regulate to the full extent of its power under the Commerce Clause when it enacted the FLSA. See *Wirtz v. Wohl Shoe Company*, 382 F.2d 848, 850 (5th Cir.1967) ("it is now settled that in enacting the FLSA Congress did not exercise the full scope of its authority to regulate the working conditions of employees whose activities merely affect commerce"). It is insufficient, for purposes of the "engaged in commerce" clause of the individual coverage provision, that an employee's work merely "affects" interstate commerce in some way. *Id*. It must be a part of commerce.

La Herradura argues that Plaintiffs were engaged in a purely local activity, and thus, not subject to "interstate commerce" that could subject La Herradura to FLSA liability under either the enterprise or individual theory. See e.g., *Duran v. Wong*, 2012 WL 5351220 (S.D. Tex. Oct. 23, 2012) (finding the allegations that plaintiff "used products that had traveled in interstate commerce" in the course of his duties as a dishwasher and kitchen helper at a local restaurant was insufficient to establish individual coverage under the FLSA; *Ovalle v. DRG Concepts, LLC,* 2018 WL 2762553, at *4 (N.D. Tex. June 8, 2018) (rejecting individual coverage of a cashier reasoning that processing credit cards from out-of-state customers was insufficient).

Plaintiffs concede for purpose of this motion only, that there is not sufficient evidence before the Court to determine whether any one or more of the Plaintiffs have

established individual coverage under the FLSA.  Plaintiffs remark that the determination of individual coverage should be reserved for trial following presentation of all of the evidence.  As such, the Court will not address this aspect of Plaintiff's motion any further.

*Common enterprise*

Plaintiffs maintain that there is coverage under the FSLA based on common enterprise. Plaintiffs rely on evidence (1) that suggests that the annual receipts would have exceeded $500,000.00 in gross receipts, had the Restaurant not closed down, and (2) the Plaintiffs were engaged in commerce and handling, selling, or otherwise working with goods or materials that had been moved in or produced for commerce pursuant to 29 U.S.C. § 203(s). Thus, because Plaintiffs are covered under the FSLA, and they were not paid for the last four weeks of their employment as admitted by Rigoberto, Plaintiffs posit that La Herradura is liable for any unpaid overtime and minimum wages, liquidated damages, and attorney fees to be determined at trial.

Congress has defined the phrase "enterprise engaged in commerce or in the production of goods for commerce." Such an enterprise is one that "(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)." 29 U.S.C. § 203(s)(1)(A). "Goods" are defined in the statute as "goods (including ships and marine equipment), wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any

part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof." 29 U.S.C. § 203(i).

Of significance, during Plaintiffs' employment, La Herradura prepared, served and/or sold food and beverages purchased from (1) Sysco, a global wholesaler, (2) La Ganderita tortillas produced by Ole Mexican Foods, headquartered in Georgia, (3) Coca-Cola, which operated internationally, and (4) Genesis knives, manufactured by Mercer Culinary, headquartered in New York.[6] See *Charris v. Tres Ceros Corp.*, 2013 WL 12065880, at *2 (S.D. Fla. Jan. 7, 2013) (denying defendant's motion to dismiss plaintiffs' FSLA claims where there was evidence that employer restaurant used products from Sysco, which would support finding of enterprise coverage).

As to the annual gross volume of sales, Plaintiffs rely on the deposition testimony of Guadalupe Villagran (aka Lupita) that during the three months of its operation, the Restaurant would have generated approximately $174,000 in gross revenue. Plaintiffs suggest that multiplying $174,000 for one quarter as provided for in 29 C.F.R. § 779.269, the total receipts of the Restaurant would have been in excess of the $500,000.00 threshold to trigger enterprise coverage. See e.g. *Landeros v. Fu King, Inc.*, 12 F.Supp.3d 1020, 1026 (S.D. Tex. 2014) (finding that under 29 C.F.R. § 779.269, "representative figure" of $125,000.00 from new business's first quarter of operations could be used to determine whether the annual threshold of $500,000.00 was met for purposes of FLSA coverage).

---

[6] Plaintiffs' exhibit C and D.

However, La Herradura notes that Plaintiffs did not plead this element in any of the three (3) Complaints.[7] La Herradura relies on Plaintiff's evidence of reported sales by Lupita of only $39,972 for July 2021.[8] La Herradura also relies on Lupita's deposition testimony that the Restaurant "would get like $2,000 income a day."[9] Additionally, La Herradura relies on the August 2021 Capital One account that was overdrawn on August 20, 2021. Relying on the $2,000 a day income, and the fact that the Restaurant was only open 87 days (June 14, 2021 through September 8, 2021), Defendant argues that the $174,000.00 estimated gross income is only a third of what is required to establish enterprise FLSA coverage. The Court does not agree with Defendant as to its calculation of estimate gross revenues but would agree that the "rolling quarter" provided by 29 C.F.R. 779.269 should be utilized to calculate annual gross income.

However, as noted by Defendants, Ms. Bustos indicated that she did not have sales documents for any month other than July 2021, either because (1) Lupita did not send her the information, or (2) because there were no sales for any other month.[10] Ms. Bustos testified that she only had sales from July 2021 as reported by Lupita, but no banks statements or sales receipts to corroborate and/or determine any other sales.[11]

In their reply, Plaintiffs submit the Capital One Banks Statements for La Herraura, LLC d/b/a El Tapito Mexican Restaurant for the periods June 2021, July 2021, and August

---

[7] Docs. 1, 3, and 23.
[8] These sales were reported to Mariana Bustos, the CPA/Accountant who submitted sales tax documents.
[9] Plaintiffs' exhibit D, pp. 74-75.
[10] Defendants' exhibit C, Mariana Busto deposition, p. 37.
[11] *Id.* pp. 30-32.

2021. The Bank Statements reflect the total deposits/credits for each of the following months:

    June 2021 - $13,529.73

    July 2021 - $35,274.74

    August 2021 - $37,504.83

The Court notes that the daily deposits are much less than what Lupita testified to ($2,000.00 per day) in her deposition. Thus, Lupita's credibility is at issue here. And despite the fact that this is a bench trial, the Court cannot make a credibility determination in deciding a dispositive motion.

Consequently, the Court finds that there is a genuine issue of material fact for trial as to whether or not there is coverage under the FSLA. As to Defendant's argument regarding the "Mom and Pop"[12] exception to FLSA coverage found in 29 U.S.C. § 203(s)(2), the Court will pretermit a decision until the trial of this matter should Plaintiffs prove the enterprise coverage under the FSLA.

---

[12] (2) Any establishment that has as its only regular employees the owner thereof or the parent, spouse, child, or other member of the immediate family of such owner shall not be considered to be an enterprise engaged in commerce or in the production of goods for commerce or a part of such an enterprise. The sales of such an establishment shall not be included for the purpose of determining the annual gross volume of sales of any enterprise for the purpose of this subsection. 29 U.S.C. 203(s)(2).

An interpretive regulation states:
    The term "other member of the immediate family of such owner" is considered to include relationships such as brother, sister, grandchildren, grandparents, and inlaws but not distant relatives from separate households. The 1966 amendments extended the exception to include family operated establishments which only employ persons other than members of the immediate family infrequently, irregularly, and sporadically.

## CONCLUSION

For the reasons set forth hereinabove, the Motion for Partial Summary Judgment Finding Defendant Liable for Unpaid Minimum Wages, Liquidated Damages, Attorney Fees, and Costs (Doc. 20) filed by Plaintiffs will be **DENIED.**

**THUS DONE AND SIGNED** in Chambers on this 15th day of September, 2023.

```
_____
         JAMES D. CAIN, JR.
     UNITED STATES DISTRICT JUDGE
```